Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
1850 45th Ave. NE, Suite 33
Salem, OR 97305
(503) 917-4409 Phone
(916) 857-6902  Facsimile

Attorneys for Plaintiff
COLES VALLEY CHURCH

## UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| COLES VALLEY CHURCH, A Non-Profit Corporation, and JAMES MATTHEW ROYSTON,<br><br>                       Plaintiffs,<br><br>v.<br><br>OREGON LAND USE BOARD OF APPEALS, An Oregon State Administrative Agency; COUNTY OF DOUGLAS, A Public Body; and DOES 1 THROUGH 50, Inclusive,<br><br>                       Defendants | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF RELIGIOUS LAND USE & INSTITUTIONALIZED PERSONS ACT [42 U.S.C. § 2000cc *et seq.*]** |

Plaintiffs COLES VALLEY CHURCH ("CVC") and JAMES MATTHEW ROYSTON ("ROYSTON," and collectively with CVC "Plaintiffs") hereby alleges as follows:

## **PARTIES**

1.    Plaintiff CVC is, and at all times herein was, a non-profit corporation incorporated under the laws of the state of Oregon that operates a church in the state of Oregon.

2.    Plaintiff ROYSTON is, and at all times herein was, a U.S. citizen, a resident of the state of Oregon, and the sole pastor of CVC.

3.    Defendant OREGON LAND USE BOARD OF APPEALS ("LUBA," and collectively with COUNTY "Defendants") is an Oregon state administrative agency whose existence and authority to act have been granted by the Oregon state legislature.  *See* Or. Rev. Stats. § 197.810.[1]

4.    Defendant COUNTY OF DOUGLAS ("COUNTY") is, and at all times herein was, a public body as defined in ORS §§ 30.260(4)(b) and 174.109.

5.    The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive, are unknown to Plaintiffs, who thus sue said Defendants under such fictitious names.  Each of the Defendants designated herein as one of the DOES is legally responsible for the events and happenings herein referred to and proximately caused injuries and damages to Plaintiffs thereby, as herein alleged.  Plaintiffs will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## JURISDICTION

6.    Plaintiffs refer to and hereby incorporate the allegations of Paragraphs 1 through 5 into this Paragraph as if fully set forth herein.

7.    This Court has jurisdiction over the Defendants pursuant to 28 U.S.C. § 1331 because Plaintiff's action arises under the Constitution and laws of the United States.

## VENUE

8.    Plaintiffs refer to and hereby incorporate the allegations of Paragraphs 1 through 7 into this Paragraph as if fully set forth herein.

---

[1] Hereinafter all references to the Oregon Revised Statutes will be preceded with the abbreviation "ORS."

9.    Venue is proper in the Court's Eugene Division because the incidents giving rise to this Complaint occurred in the County of Douglas and affect real properties located in the County of Douglas.

## GENERAL ALLEGATIONS

10.    Plaintiffs refer to and hereby incorporate by reference the allegations set forth in Paragraphs 1 through 9 into this Paragraph as if fully set forth herein.

11.    CVC is a small church of roughly 20 congregants, give or take a few, whose house of worship is located on 1.44 acres at 1421 Iverson Road (the "Property") in Umpqua, a small farming community in rural Douglas County.

12.    CVC's Property is in an area zoned for exclusive farm use ("EFU"). Defendant COUNTY's Land Use Development Ordinance ("LUDO") permits both churches and single-family residential dwellings that are not provided in conjunction with farm use to exist on land zoned EFU.  *See* Attached **Exhibit "A"** [a copy of the LUDO provisions that are relevant to this case – specifically, see LUDO § 3.4.075(5), (9)].  The LUDO also permits "accessory uses" of real property – i.e., "uses that are incidental, appropriate, and subordinate to the main use of a lot or building" – on lands zoned EFU.  *Id.* [specifically, see § 1.090].

13.    Both Oregon law and LUDO § 3.4.075(1) allow for primary or accessory dwellings customarily provided in conjunction with farm use to be established on land zoned EFU.  *See* ORS § 215.283(1)(e) and Ex. "A."

14.    Oregon law likewise permits churches to exist on land zoned EFU. *See* ORS § 215.283(1)(a).  A parsonage is a church-owned residential dwelling that a church customarily provides for its clergy in conjunction with the church's religious use of its real property.

15.    CVC holds a sincere belief that in order to serve the community of Umpqua effectively, its pastor must live full-time in the community he has been

called to serve.  ROYSTON and his wife sold their home in Roseburg so they could relocate to Umpqua for that reason.

16.    Umpqua has little to no available housing.  The nearest towns are Sutherlin, which is approximately 10 miles away, and Roseburg, which is approximately 17 miles away.  If ROYSTON had no choice but to live in either town, he would be far less accessible to the people of Umpqua who call on him for prayer, counsel, encouragement, companionship, or even help with farm chores. Worse than that, ROYSTON would feel as if he is disobeying God by living outside of Umpqua, where he has been called to serve.

17.    Furthermore, as the sole pastor of a small rural church, ROYSTON must wear a variety of hats: Not only must he lead worship services and Bible studies and provide spiritual counsel to his congregants, he is responsible for caring for and maintaining CVC's Property, including repairs to CVC's house of worship.  His duties would essentially require him to be at the Property on a full-time basis even if he did not live there.

18.    To ensure that its pastor actually has a place to live in Umpqua, CVC, acting through ROYSTON, applied to Defendant COUNTY's Planning Commission for a permit to convert one room in the house of worship on the Property into a parsonage for its pastor and his wife.  After notice and a hearing on Plaintiff's permit application, COUNTY approved CVC's application in March 2019.  *See* Attached **Exhibit "B"** [a copy of COUNTY's decision approving CVC's application].

19.    Unhappy with Defendant COUNTY's decision, the owners of a vineyard (the "Vineyard Owners") whose real property neighbors CVC's Property appealed COUNTY's decision to Defendant LUBA.  Under Oregon law [*see* ORS § 197.825], LUBA has exclusive jurisdiction to review the land use decisions of

local governments within the state of Oregon, and COUNTY is accordingly obligated to comply with LUBA's orders.

20.     The Vineyard Owners argued to Defendant LUBA that Oregon law defines churches as "nonresidential place[s] of worship" and mandates that any housing churches provide for their clergy be detached from the churches' houses of worship. *See* ORS § 215.441(1)(g).  CVC argued in response that even if the Vineyard Owners interpreted Oregon law correctly, pursuant to the U.S. Constitution's Supremacy Clause, the federal Religious Land Use and Institutionalized Persons Act ("RLUIPA") not only prevails over Oregon law where the two conflict, but also requires local governments like Defendant COUNTY to let churches use their own land for the free exercise of religion "to the maximum extent permitted by the terms of" the Constitution and RLUIPA. *See* 42 U.S.C. § 2000-cc(3)(g).  In allowing CVC to convert one room into a parsonage for ROYSTON and his wife, COUNTY complied with RLUIPA, and CVC asked LUBA to do likewise.

21.     Defendant LUBA sided with the Vineyard Owners in August 2019. *See* Attached **Exhibit "C"** [a copy of LUBA's order reversing Defendant COUNTY's decision].  CVC appealed LUBA's order to the Oregon Court of Appeals soon thereafter, as CVC had to in order to exhaust state administrative remedies.

22.     The Oregon Court of Appeals ultimately affirmed LUBA's decision in October 2019.  *See* Attached **Exhibit "D"** [a copy of the Court of Appeals' decision].  Plaintiff then petitioned the Oregon Supreme Court for review in December 2019.  The Oregon Supreme Court denied Plaintiff's petition on April 9, 2020.  *See* Attached **Exhibit "E"** [a copy of the Oregon Supreme Court's decision].  All state administrative remedies have thus been exhausted.

23.   Because Defendant LUBA's decision has rendered CVC unable to proceed with the conversion of one room in its house of worship into a parsonage, ROYSTON has had to purchase a motor home, which he and his wife have been living in on CVC's Property – in violation of Douglas County law, which only permits them to so live for 90 days – for more than a year.  This is the only way ROYSTON can fulfill the church's requirement that he live in the community of Umpqua and thereby be readily accessible to Umpqua residents who need him.

## FIRST CAUSE OF ACTION:
## VIOLATION OF RLUIPA'S "SUBSTANTIAL BURDEN" PROVISION
### Against All Defendants

24.   Plaintiffs refer to and hereby incorporate by reference the allegations set forth in Paragraphs 1 through 23 into this Paragraph as if fully set forth herein.

25.   RLUIPA prohibits state agencies from substantially burdening a church's free exercise of religion absent a compelling interest allowing for such a burden.  Even then, a state agency must narrowly tailor its decisions to avoid burdening the church's religious exercise any more than necessary.

26.   In reversing Defendant COUNTY's decision, Defendant LUBA placed a substantial burden on the religious exercise of both CVC and ROYSTON where none previously existed: COUNTY's allowance of CVC to build a parsonage did not burden CVC's ability to build a parsonage for ROYSTON – and, accordingly, ROYSTON's ability to live in and serve the community of Umpqua.  LUBA's reversal of COUNTY's decision did, especially since Umpqua has little to no available housing.

27.   Forcing ROYSTON to commute to Umpqua from Sutherlin or Roseburg is more than a minor inconvenience for both CVC and ROYSTON: For CVC, it means having a pastor who is less accessible to – and, accordingly, less

able to connect with – the community he is called to serve.  For ROYSTON, it means being unable to fulfill his calling to live in and serve the people of Umpqua and feeling disconnected from the community he is called to live in and serve.

28.    No compelling government interest is served by enforcing ORS § 215.441(1)(g)'s requirement that parsonages be detached from houses of worship: The closest thing to a compelling government interest asserted in this case was the assertion of the Vineyard Owners – acting in the government's stead – both before Defendant COUNTY's Planning Commission and LUBA, that farmland needs to be preserved for farming.  Never mind that neither CVC's conversion of one room in its house of worship into a parsonage for ROYSTON and his wife nor ROYSTON's ability to live in said parsonage impact the Vineyard Owners' activities to conduct farming-related activities in any way: Both the U.S. Court of Appeals for the Ninth Circuit's decision in *Guru Nanak Sikh Society v. Cnty. of Sutter*, 456 F.3d 978 (9th Cir. 2006), and Oregon's own laws, which allow churches, single-family dwellings, and accessory uses on land zoned for exclusive farm use, make clear that there is no compelling interest in preserving farmland for farm use.  Furthermore, the compelling government interest in limiting environmental impacts favors letting CVC convert a room in its house of worship into a residence for its pastor, as converting one room in a building would have a far less damaging environmental impact than building separate housing would.

**SECOND CAUSE OF ACTION:**
**<u>VIOLATION OF RLUIPA'S "EQUAL TERMS" PROVISION</u>**
**Against All Defendants**

29.    Plaintiffs refer to and hereby incorporate by reference the allegations set forth in Paragraphs 1 through 28 into this Paragraph as if fully set forth herein.

30.    Both Defendant LUBA's decision and ORS § 215.441 itself violate RLUIPA's "equal terms provision," as neither treats churches on equal terms with similarly situated secular comparators.  To wit:

a. Farms and churches on lands zoned EFU are similarly situated in that each can be both the homes and the workplaces of the people who operate them.  LUBA's decision essentially asserts that while farms can have dwellings on land zoned for exclusive farm use, churches cannot – or, if churches do maintain dwellings on such land, the dwellings must be separate from the houses of worship. *See* Ex. "C."  Farms, by contrast, have no restrictions on whether dwellings can be attached to barns or other farming facilities where workers and others may gather.

b. ORS § 197.685(2) provides, "When a need has been shown for seasonal farmworker housing within the rural area of a county, needed housing ***shall*** be permitted in a zone or zones with sufficient buildable land to satisfy that need" (emphasis added).  Oregon law likewise recognizes that churches in rural communities may find it reasonably necessary to provide housing for the churches' employees.  *See* ORS 307.140.  It is reasonably necessary for churches in rural communities to provide housing for their ministers when the communities lack alternative housing.

c. ORS § 215.283(1)(n) allows wineries to exist on lands zoned EFU.  Wineries are similar to churches in that they frequently host large gatherings, such as weddings, concerts, and picnics.  *See* ORS §§ 215.452(2)(b)(C) and 215.453(11). Wineries are also similar to churches in that they frequently have support buildings, such as

offices and bunkhouses for the laborers they employ.  *See* Oregon Occupational Health & Safety Administration, *Agricultural Labor Housing (ALH) Interpretations: Questions and Answers* 1, 2 (June 26, 2008, revised July 20, 2018).  Unlike churches, wineries have no restrictions on whether bunkhouses can be attached to facilities where gatherings can take place on their property.

d. ORS § 215.283(1)(s) permits "fire service facilities providing rural fire protection services" in areas zoned EFU.  Firefighters typically live, at least part-time, in the facilities from which they serve their communities, as CVC wants ROYSTON to do.  Oregon law does not require rural fire departments to maintain housing separate from the facilities that house fire trucks or where firefighters participate in training exercises.

Under ORS 215.441(1), by contrast, churches that house their clergy ***must*** do so separately from their main facilities.  While the nature of ROYSTON's work is nowhere near as dangerous as a firefighter's, an Umpqua resident's need for help with a spiritual or emotional crisis may be no less an emergency – hence, CVC's need for ROYSTON to be readily accessible to the community he is called to serve.  Oregon law's treatment of churches – and Defendant LUBA's enforcement of it – is thus unequal, as it singles out churches for distinctive treatment, and is therefore impermissible under RLUIPA.  42 U.S.C. § 2000cc(b)(1).

e. ORS § 215.283(2)(e) allows "community centers" owned by nonprofit corporations and operated for residents of rural communities to exist on lands zoned EFU.  "Community centers"

include emergency and transitional shelters for veterans. Such shelters typically need individuals to be on-site to tend to any needs their overnight residents may have. Community centers are not restricted as to whether the individuals operating them must live in housing separate from the centers themselves.

f.  ORS § 215.283(2)(o) permits "[r]esidential homes as defined in ORS § 197.660, in existing dwellings" to exist on lands zoned EFU. Oregon law defines "residential homes" to include facilities for in-patient drug and alcohol treatment. *See* ORS 197.660(2) and 443.400(11)-12). Churches are places to which patients seeking freedom from drug and/or alcohol addiction frequently turn for help. Furthermore, individuals tasked with overseeing the treatment of patients receiving drug and alcohol treatment at residential homes frequently live on-site to monitor the patients, assist them with mental and emotional breakdowns, ensure that they do not experience relapses, etc. Residential homes, unlike churches, are not required to house their employees in housing separate from the buildings where patients receive treatment.

g.  ORS § 215.283(2)(aa) permits private elementary and secondary schools to have "all buildings essential to the operation of a school." Such buildings may include dormitories or other sleeping quarters, which are commonly found at boarding schools in rural communities. Boarding schools, incidentally, are not restricted as to whether their dormitories must be detached from classrooms, auditoriums, gymnasiums, or other gathering areas.

31.     Defendant LUBA's reversal of Defendant COUNTY's decision undid COUNTY's previous equal treatment of CVC.

## REQUEST FOR DECLARATORY RELIEF

32.     Plaintiffs refer to and hereby incorporate by reference the allegations set forth in Paragraphs 1 through 31 into this Paragraph as if fully set forth herein.

33.     As stated *supra*, Or. Rev. Stats. § 215.441(1) defines churches as "nonresidential places of worship," and subsection (g) of that statute prohibits housing for clergy from being attached to houses of worship.

34.     Both the "nonresidential" and "detached" provisions in ORS § 215.441(1) substantially burden the religious exercise of churches like CVC, which are located in rural areas with limited or no available housing, and clergy like ROYSTON, who have difficulty relocating to rural areas that have little to no housing available.

35.     No compelling government interest is served by either the "nonresidential" or "detatched" provisions in ORS § 215.441(1).  The mandate that parsonages be detached from houses of worship is arbitrary.  Furthermore, state and local governments do have a compelling interest in limiting adverse impacts on the environment.  Letting churches convert rooms in their houses of worship into parsonages for their clergy would allow for far less damage to the environment than requiring them to build separate housing would.

36.     The "nonresidential" and "detached" provisions do not treat churches on equal terms with farms, firehouses, or other places that may serve as both homes and workplaces for those who live there.

37.     Based on the foregoing, the Court should declare that Defendant LUBA's application of ORS § 215.441(1) to Plaintiffs violates RLUIPA, and that

§ 215.441(1) must yield to RLUIPA pursuant to the U.S. Constitution's Supremacy Clause.

## REQUEST FOR INJUNCTIVE RELIEF

38.     Plaintiffs refer to and hereby incorporate by reference the allegations set forth in Paragraphs 1 through 37 into this Paragraph as if fully set forth herein.

39.     Because Defendant LUBA's order overturned Defendant COUNTY's decision to allow CVC to convert one room in its house of worship into a parsonage for ROYSTON and his wife and thereby violated RLUIPA, Plaintiffs hereby request that the Court preliminarily and permanently enjoin all Defendants from enforcing ORS § 215.441(1) against Plaintiffs and thus abridging Plaintiffs' constitutionally protected freedom of religion.  Such an injunction would let Plaintiffs convert one room on CVC's Property into a parsonage for ROYSTON so ROYSTON can fulfill his calling to live in and serve the community of Umpqua.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

### ON ALL CAUSES OF ACTION:

1.     For declaratory and injunctive relief, as stated *supra*;

2.     For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

3.     For such other and further relief as the Court may deem proper.


Dated: April 21, 2020                    PACIFIC JUSTICE INSTITUTE

                                         __/s/ RAY D. HACKE_____
                                         Ray D. Hacke
                                         Attorney for Plaintiffs
                                         COLES VALLEY CHURCH *et al.*

# PROOF OF SERVICE

I am employed in the County of Marion, State of Oregon.  I am over the age of eighteen and not a party to the within action; my business address is 1850 45th Ave., Suite 33, Salem, OR 97305.

On or about April 21, 2020, I served the following documents on the interested parties by placing a true copy thereof enclosed in sealed envelope(s) addressed to said parties:

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF RELIGIOUS LAND USE & INSTITUTIONALIZED PERSONS ACT [42 U.S.C. § 2000cc *et seq.*]**

## PLEASE SEE ATTACHED SERVICE LIST

_____BY MAIL:  I am readily familiar with the firm's practice of collection and processing of correspondence for mailing.  Under that practice, it would be deposited with the U.S. postal service on that same date with postage thereon fully prepaid at Salem, Oregon in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

__X__BY PERSONAL SERVICE:  I caused such envelope to be delivered by hand to the office of the addressee(s).

_____BY FACSIMILE TRANSMISSION:  The facsimile machine I used complied with California Rules of Court 2003(3) and no error was reported by the machine.  Pursuant to rule 2005(i), I caused the machine to print a record of the transmission, a copy of which is attached to this proof of service.

_____(State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

__X__(Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 21, 2020, at Salem, Oregon.

*/s/ RAY D. HACKE*_____
Ray D. Hacke

## <u>SERVICE LIST</u>

- Michelle Gates Rudd
  Chairperson
  Land Use Board of Appeals
  775 Summer St. NE #330
  Salem, OR 97301

- Paul Meyer
  Douglas County Counsel
  1036 SE Douglas Ave., Rm. 321
  Roseburg, OR 97470