UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

COLES VALLEY CHURCH,                                    Case No. 6:20-cv-00661-MK
a non-profit organization; and
JAMES MATTHEW ROYSTON,                                   **OPINION AND
ORDER**

                        Plaintiffs,

        v.

OREGON LAND USE BOARD
OF APPEALS, an Oregon State
Administrative Agency; DOUGLAS
COUNTY; and DOES 1–50,

                        Defendants,

_____

**KASUBHAI,** United States Magistrate Judge:

        Plaintiffs Coles Valley Church and James M. Royston brought this lawsuit against

Defendants the Oregon Land Use Board of Appeals, Douglas County, and John Does 1–50

(collectively "Defendants"[1]) seeking declaratory and injunctive relief under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq. See generally* Compl., ECF No. 1. LUBA moved to dismiss arguing the Court lacks subject matter jurisdiction based on the *Rooker-Feldman* doctrine and based on claim and issue preclusion. *See* Oregon Land Use Board of Appeals' Mot. Dismiss, ECF No. 8 ("LUBA's Mot. Dismiss"). The Court heard oral argument on July 17, 2020, and requested supplemental briefing, which Plaintiffs and LUBA subsequently supplied. *See* ECF Nos. 21–24. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 19. After a careful review of the parties' submissions, for the reasons that follow, LUBA's motion to dismiss is DENIED.

## BACKGROUND

### I.    Factual and Procedural Background

Plaintiffs operate a small church in Umpqua, Oregon, a small farming community located in Douglas County. Compl. ¶¶ 1–3, ECF No. 1. Plaintiffs' property is zoned for exclusive farm use ("EFU"), which allows churches and single-family residential dwellings not engaged in farm use to exist on EFU zoned land. *See* Compl. Ex. A, ECF No. 1-2. County ordinances also permit "accessory uses" of real property—*i.e.*, "uses incidental, appropriate, and subordinate to the main use of a lot or building"—on EFU zoned land. *Id.* Oregon law and county ordinance further allow for primary or accessory dwellings to be established on EFU zoned land. *Id.*; *see also* Or. Rev. Stat. ("ORS") § 215.283(1)(e). Oregon law also authorizes churches on EFU zoned land in certain circumstances. *See* ORS § 215.283(1)(a).

---

[1] Where appropriate, this Opinion and Order refers to individual parties to this lawsuit as follows: Plaintiffs Cole Valley Church ("CVC") and Royston; Defendants Oregon Land Use Board of Appeals ("LUBA") and Douglas County.

Umpqua has little to no available housing for its pastor, Plaintiff Royston. Compl. ¶ 4.

Royston's responsibilities as a pastor require his presence at CVC's property on a full-time basis

to, among other duties, lead worship services, provide spiritual counsel, and maintain church

property. *Id*. Plaintiffs thus hold a sincere religious belief that in order to serve the Umpqua

community effectively, Royston must live fulltime in the community on church property. Compl.

¶ 3–4.

Plaintiffs applied to the Douglas County Planning Commission (the "Commission") for a

permit to convert one room in the house of worship into a parsonage for Royston and his wife.

*Id.* A parsonage is a church-owned residential dwelling provided in conjunction with a church's

religious use of its real property. Compl. ¶ 14. Initially, the Commission approved the

application. *Id.*

A neighboring vineyard owner (the "Wetherells") challenged the Commissions' approval

and appealed to LUBA, which has jurisdiction to review land use decisions of local governments

within the state of Oregon. Compl. ¶ 4–5. The Wetherells argued to LUBA that Oregon law

defines churches as "nonresidential place[s] of worship" and "mandates that any housing

churches provide for their clergy be *detached* from the churches' houses of worship." Compl. ¶

20 (emphasis added). *See also* ORS § 215.441(1)(g). Plaintiffs responded that the RLUIPA

required local governments to allow churches to use their own land for the free exercise of

religion "to the maximum extent permitted by the terms of" the United States Constitution and

RLUIPA and therefore the Wetherells' challenge to the Commission's application grant should

fail. *Id*. (citing 42 U.S.C. § 2000-cc(3)(g)).

Ultimately, LUBA denied Plaintiffs' application in August 2019. Compl. ¶ 5; *see also*

Compl. Ex. C, ECF No. 1-4. The Oregon Court of Appeals affirmed LUBA's decision without

opinion in October 2019. Compl. Ex. D, ECF No. 1-5. The Oregon Supreme Court denied the

petition for review approximately six months thereafter. *Id.*, Ex. E. ECF No. 1-6.

## II.    RULIPA's Enactment and Statutory Framework

Congress enacted RLUIPA to protect the free exercise of religion guaranteed by the First

Amendment from government regulation in the wake of several decisions by the Supreme Court.

*See California-Nevada Annual Conference of the Methodist Church v. City & Cty. of San*

*Francisco*, 74 F. Supp. 3d 1144, 1153 (N.D. Cal. 2014). Congress' first attempt to legislate such

protections followed the Supreme Court's decision in *Employment Div., Dept. of Human Res. of*

*Or. v. Smith*, 494 U.S. 872 (1990) ("*Smith*").

In *Smith*, the Court held that neutral laws of general applicability could prohibit conduct

prescribed by an individual's religion consistent with the Constitution. *Id*. The Court determined

that such laws were not subject to heightened scrutiny. *Id.* at 885. Even where the burden on

religion was substantial, the Court rejected the attempt to require state laws to serve a compelling

interest. *Id.* at 883–84.

After *Smith*, Congress enacted the Religious Freedom Restoration Act ("RFRA"), 42

U.S.C. § 2000bb *et seq.*, relying on its enforcement powers under section 5 of the Fourteenth

Amendment. Through RFRA, Congress attempted to codify the pre-*Smith* free-exercise

jurisprudence by prohibiting the government from "substantially burden[ing] a person's exercise

of religion" unless "it demonstrates that application of the burden to the person . . . is in

furtherance of a compelling government interest and . . . is the least restrictive means of

furthering that compelling governmental interest." 42 U.S.C. § 2000bb–1(a).

The Supreme Court, however, held that RFRA was unconstitutional as applied to state

and local governments because it exceeded Congress' section 5 powers. *See City of Boerne v.*

*Flores*, 521 U.S. 507, 536 (1997). Congress' section 5 enforcement powers, the Court held, are limited to enacting legislation that is "remedial" in nature. *Id*. And such powers were limited to correcting documented constitutional violations—*i.e.*, legislation required a "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.* at 520. Because RFRA was "so out of proportion to a supposed remedial or preventive object," and the legislative history "lack[ed] examples" of the wrongs sought to be corrected, the Court deemed unconstitutional Congress' application of RFRA to state and local governments. *Id.* at 530, 532, 536.

In response to the Court's partial invalidation of RFRA, Congress enacted RLUIPA, 42 U.S.C. § 2000cc. RLUIPA "'replace[d] the void provisions of RFRA[,] and prohibit[ed] the government from imposing 'substantial burdens' on 'religious exercise' unless there exists a compelling governmental interest and the burden is the least restrictive means of satisfying the governmental interest." *Guru Nanak Sikh Soc. of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 985–86 (9th Cir. 2006) (citing *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1033–34 (9th Cir. 2004). Specifically, RLUIPA provides that:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—
>
> > (A) is in furtherance of a compelling governmental interest; and
> >
> > (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.A. § 2000cc. "Religious exercise" as defined by RLUIPA is limited to:

> > (A) In general
>
> > > The term "religious exercise" includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief.
>
> > (B) Rule
>
> > > The use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose.

42 U.S.C.A. § 2000cc–5. To avoid RFRA's fate, Congress limited RLUIPA's reach to only regulations regarding land use and prison conditions. *See id.* (citing *Cutter v. Wilkinson*, 544 U.S. 709, 715, (2005)). Of particular relevance here is RLUIPA § 2000cc-(a)(2)(c), which relates to substantial burdens in the context of land use regulations. Congress defined the activities that qualify as "land use" as follows:

> > The term "land use regulation" means a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest.

42 U.S.C. § 2000cc–5. RLUIPA thus applies if "the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2)(C).

Under RLUIPA, the religious entity bears the burden of persuasion on whether zoning laws, or the application of those zoning laws to a particular property, "substantially burdens" its "exercise of religion." *San Jose Christian Coll.*, 360 F.3d at 1034. However, Congress directed

that RLUIPA "be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C.A. § 2000cc–3.

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). Courts must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (noting that when a court lacks subject-matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even *sua sponte* if necessary).

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For the purposes of the motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). Nevertheless, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Bacca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## DISCUSSION

LUBA moves to dismiss Plaintiffs' RLUIPA claims on two principal grounds. First, they argue that subject matter jurisdiction is nonexistent based on the *Rooker-Feldman* doctrine. Second, they assert that Plaintiffs have failed to state a claim based on claim and issue preclusion. Plaintiffs oppose the motion on both grounds. Because the Court finds that Plaintiffs' claims are not of the kind that *Rooker-Feldman* divests from a federal district court's jurisdiction, the motion is denied on that ground. Further, because the Court finds neither claim nor issue preclusion bar Plaintiffs' claims, the motion is denied as to that argument as well.

### A. *Rooker-Feldman*

The *Rooker-Feldman* doctrine derives its name from the Supreme Court cases of *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In both cases, the Supreme Court held that the district courts did not have subject-matter jurisdiction over claims seeking to reverse state judicial determinations because appellate jurisdiction over state actions is left exclusively to the Supreme Court. *See Rooker*, 263 U.S. at 415–416; *Feldman*, 460 U.S. at 482.[2] More recently, however, the Supreme Court has explained that the "narrow ground occupied by *Rooker-Feldman* " is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments

---

[2] Specifically, in *Rooker*, the losing party in a state supreme court—who failed to obtain review in the United States Supreme Court—filed an action in federal district court arguing the state court ruling was unconstitutional. 263 U.S. at 414–15. The Court rejected the argument and explained that the "aggrieved litigant [could not] be permitted to do indirectly what he no longer can do directly." *Id.* at 416. Likewise, in *Feldman*, decided 60 years later, the plaintiffs had been refused admission to the District of Columbia bar by the District of Columbia Court of Appeals and sought review in federal district court. 460 U.S. at 474–76. The Court held that to the extent that the plaintiffs challenged the Court of Appeals' decisions themselves—as opposed to the bar admission rules promulgated nonjudicially by the Court of Appeals—their sole avenue of review was through United States Supreme Court. *Id.* at 476.

rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005); *see also Lance v. Dennis*, 546 U.S. 459, 464 (2006) ("[n]either *Rooker* nor *Feldman* elaborated a rationale for a wide-reaching bar on the jurisdiction of lower federal courts, and our cases since *Feldman* have tended to emphasize the narrowness of the *Rooker-Feldman* rule"). In other words, *Rooker-Feldman* is not triggered simply by entry of a state court judgment. *Id.* at 292.

A federal district court must engage in a two-step inquiry to determine whether *Rooker-Feldman* forecloses subject matter jurisdiction. First, the Court must determine whether the action contains a forbidden *de facto* appeal of a state court decision. *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003). If the Court determines that the plaintiff's lawsuit is a *de facto* appeal, there is no subject matter jurisdiction over any issue that is "inextricably intertwined" with the state court judicial opinion. *Id.* at 1158. "The 'inextricably intertwined' language from *Feldman* is not a test to determine whether a claim is a *de facto* appeal, but is rather a second and distinct step in the *Rooker-Feldman* analysis." *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013). In other words, "[s]hould the action not contain a forbidden *de facto* appeal" at the first step, "the *Rooker-Feldman* inquiry ends" and there is no need to proceed to the second step. *Id.*

LUBA assert that this lawsuit is a *de facto* appeal of the judgment of the Oregon Supreme Court. Essentially, LUBA contends that because the administrative decision of LUBA contains "substantive consideration and analysis of RLUIPA issues"—and because Oregon's appellate courts did not reverse that decision—Plaintiff's "requested relief . . . necessarily overturns the Oregon Supreme Court order upholding LUBA's ruling." LUBA's Mot. Dismiss 6, ECF No. 8.

The Court is unpersuaded for at least three reasons. First, the Supreme Court has indicated that the *Rooker-Feldman* doctrine does not apply with the same force to state administrative agency determinations such as the decision here by LUBA. *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 644 n.3 (2002) (explaining that *Rooker-Feldman* "has no application to judicial review . . . , including determinations made by a state administrative agency").[3]

Second, Plaintiffs plead that their express purpose of seeking review in the Oregon appellate courts was to exhaust administrative remedies. *See* Compl. ¶ 21 ("CVC appealed LUBA's order to the Oregon Court of Appeals . . . in order to exhaust state administrative remedies."); *see also* ORS § 197.850(3)(a) (explaining that the initial process for review of Board orders begins by "filing a petition in the [Oregon] Court of Appeals").

Third, and most importantly, even if LUBA could establish that Plaintiffs' lawsuit is tantamount to a *de facto* appeal, given the Oregon appellate court's total lack of discussion of the merits of Plaintiff's RLUIPA claim, it cannot be said that any issue addressed here is "inextricably intertwined" with the state court decisions or reasoning. Compl. Ex. D (Oregon Court of Appeals affirming LUBA decision "WITHOUT OPINION") (capitalization in original), ECF No. 1-5; Ex. E (Oregon Supreme Court denying petition for review without explanation), ECF No. 1-6.

---

[3] LUBA's attempt to distinguish *Verizon* on the grounds that the administrative decision in that case had not been subject to judicial review whereas Plaintiffs here "appealed LUBA's decision all the way to the Oregon Supreme Court" is unavailing. LUBA's Mot. Reply 3, ECF No. 13. LUBA has not directed the Court to any binding authority suggesting that a plaintiff's exhaustion of state administrative remedies that includes state court judicial review automatically divests district courts of jurisdiction based on *Rooker-Feldman*. Moreover, the non-binding cases Plaintiff does cite are readily distinguishable. Finally, the Court declines to consider new arguments not raised in LUBA's initial motion to dismiss.

A close reading of *Bell v. City of Boise* is instructive on the issue. In that case, a group of individuals experiencing homelessness sued the City of Boise in federal court, alleging that ordinances criminalizing sleeping in public places violated federal law. 709 F.3d at 893. Among other relief, the plaintiffs in *Bell* asked the federal court to order expungement of the records of any individuals unlawfully cited or arrested under the ordinances. *Id.* at 894. The district court dismissed the plaintiffs' claims under *Rooker-Feldman. Id.* at 895-96.

The Ninth Circuit reversed. Reinstating the plaintiffs' claims, the court explained that "[a] *de facto* appeal exists when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision.'" *Bell*, 709 F.3d at 897 (citing *Noel*, 341 F.3d at 1164). The court emphasized that "even if a plaintiff seeks relief from a state court judgment, such a suit is a forbidden *de facto* appeal *only if* the plaintiff also alleges a legal error by the state court." *Id.* (emphasis added); *see also Kougasian v. TMSL Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) ("[A] plaintiff must seek not only to set aside a state court judgment; he or she must also allege a legal error by the state court as the basis for that relief").

Plaintiffs here do not allege that the state court committed legal error. Rather, they take issue with the reversal of the parsonage permit granted to them by Douglas County and argue LUBA specifically violated the standards mandated by Congress in enacting the RLUIPA. *See* Compl. ¶¶ 24–31, ECF No. 1. As such, Plaintiffs' claims arise from LUBA's allegedly erroneous application of RLUIPA, not from any legal error committed by the Oregon state courts. *Rooker-Feldman* therefore does not deprive this Court of subject matter jurisdiction. LUBA's motion to dismiss is denied as to its *Rooker-Feldman* argument.

**B. Preclusive Effect of Prior Decision**[4]

1. <u>Claim Preclusion</u>

LUBA next argues that Plaintiffs' lawsuit is barred by claim preclusion. LUBA's Mot.

Dismiss 7–8, ECF No. 8. The parties disagree as to whether federal or state law is the appropriate

source of authority on the issue of claim preclusion. Under the federal test, to properly invoke

claim preclusion the asserting party must establish: "(1) an identity of claims, (2) a final

judgment on the merits, and (3) privity between parties." *Headwaters Inc. v. U.S. Forest Serv.*,

399 F.3d 1047, 1052 (9th Cir. 2005) (citation and quotation marks omitted). Similarly, the

Oregon test "generally prohibits a party from relitigating the same claim or splitting a claim into

multiple actions against the same opponent." *Lincoln Loan Co. v. City of Portland*, 340 Or. 613,

617–18 (2006). In *Lincoln*, the Oregon Supreme Court explained:

> a plaintiff who has prosecuted one action against a defendant
> through to a final judgment binding on the parties is barred by
> [claim preclusion] from prosecuting another action against the
> same defendant where the claim in the second action is one which
> is based on the same factual transaction that was at issue in the
> first, seeks a remedy additional or alternative to the one sought
> earlier, and is of such a nature as could have been joined in the first
> action.

*Id.* (citation and quotation marks omitted).

---

[4] "For clarity, [this] Opinion refers to 'claim preclusion' and 'issue preclusion' rather than '*res judicata*' and 'collateral estoppel.'" *Gonzales v. California Dep't of Corr.*, 739 F.3d 1226, 1230 (9th Cir. 2014) (citation omitted). "Claim preclusion forecloses successive litigation of the very same claim, whether or not re[-]litigation of the claim raises the same issues as the earlier suit. Issue preclusion bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* (internal citation and quotation marks omitted).

The Court need not resolve which test applies here, however, because under either standard LUBA's argument fails. As Plaintiffs correctly highlight, the issues and claims before the and this Court are sufficiently distinct as are the parties. Pls.' Opp'n 18–19, ECF No. 9. Significantly, LUBA's decision specifically notes that "the county did not actually apply or rely on RLUIPA in reaching its decision." Compl. Ex. D at 7, EFC No. 1-4. Moreover, the Wetherells initiated the appeal to LUBA from the County Commission in which Plaintiffs intervened. Compl. ¶ 19. Here, by contrast, Plaintiffs have brought their lawsuit specifically against LUBA. Compl. ¶¶ 26–31. Although the issues, claims, and parties before LUBA and this Court arguably overlap in some respects, on this record, Plaintiffs' claims are not bared by claim preclusion.

2. <u>Issue Preclusion</u>

Next, LUBA asserts that Plaintiffs' claims are barred by issue preclusion. Mot. Dismiss 8, ECF No. 8. The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give state court judgments the same preclusive effect that the law of the state where the judgment was rendered would give. *Gonzales v. California Dep't of Corr.*, 739 F.3d 1226, 1230 (9th Cir. 2014) (citation omitted). The parties again cite to both federal and state law standards in identifying the appropriate test for issue preclusion. LUBA relies on the federal test, which requires the party invoking preclusion to show:

> (1) the issue at stake must be identical to the one alleged in the prior litigation;
>
> (2) the issue must have been actually litigated in the prior litigation; and
>
> (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

*Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992). Plaintiffs cite federal law, as well as Oregon caselaw which:

> precludes future litigation on a[n] issue only if the issue was actually litigated and determined in a setting where its determination was essential to the final decision reached.

*Drews v. EBI Companies*, 310 Or. 134, 139 (1990) (citation and quotation marks omitted).

As with LUBA's claim preclusion argument, the Court need not decide the appropriate standard for applying issue preclusion in the context of RLUIPA challenges to state administrative decisions because LUBA's contentions fail under either test. Here, as discussed above, the issues before LUBA and this Court sufficiently differ so as to render issue preclusion inappropriate. Moreover, whether Plaintiffs' RLUIPA claim was actually litigated before LUBA or in the Oregon appellate courts is at best muddled. The Wetherells' assignment of error before LUBA asserted that the Douglas County Planning Commission erroneously applied Oregon law. *See* Compl. Ex. D at 8, EFC No. 1-4 ("In the sole assignment of error, petitioners argue that the county misinterpreted and misconstrued [Oregon law] and failed to make adequate findings supported by substantial evidence."). And Plaintiff's primary response to that argument before LUBA—in support of the Commission as intervenors—rested on Oregon law, not RLUIPA. *See* Compl. Ex. D at 8, EFC No. 1-4. In other words, Plaintiff's could not have argued to LUBA that any action of the Commission violated RLUIPA because the Commission initially found in their favor.[5] Finally, given the Oregon appellate courts' complete lack of discussion in declining to reverse the Board's determination, the Court cannot conclude that the RLUIPA issue was critical, necessary, or essential the judgments entered by those courts sufficient to make issue

---

[5] Plaintiffs did argue RLUIPA raised an alternative ground to affirm the Board's decision. Compl. Ex. D at 8, EFC No. 1-4. Given the procedural posture of the parties before LUBA, however, the Court is not convinced that issue preclusion applies in such a context.

preclusion appropriate in this context. *See* Compl. Exs. D–E; *Clark*, 966 F.2d at 1320; *Drews*,

310 Or. At 139. *See also* ORS § 197.850(8)–(9) (explaining the limited scope of judicial review

and deference owed to LUBA's decisions).

In sum, the Court finds that neither claim nor issue preclusion apply to Plaintiffs' claims.

As such, LUBA's motion to dismiss is denied as to this issue.

## ORDER

For the reasons above, LUBA's motion to dismiss (ECF No. 8) is denied.

DATED this 27th day of October 2020.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI
United States Magistrate Judge