UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| COLES VALLEY CHURCH,<br>a non-profit organization; and<br>JAMES MATTHEW ROYSTON,<br><br>                Plaintiffs,<br><br>    v.<br><br>OREGON LAND USE BOARD<br>of APPEALS, an Oregon State<br>Administrative Agency; and JOHN<br>DOES 1–50,<br><br>                Defendants. | Case No. 6:20-cv-00661-MK<br><br>**OPINION AND ORDER** |

**KASUBHAI,** United States Magistrate Judge:

      Plaintiffs Coles Valley Church and James M. Royston brought this action in April 2020

against the Oregon Land Use Board of Appeals ("LUBA"), and John Does 1–50 (collectively

"Defendants"), seeking declaratory and injunctive relief under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*. *See generally* Compl., ECF No. 1.[1] Currently before the Court is Defendants' second motion to dismiss under Fed. R. Civ. P. ("Rule") 12. Def. LUBA's Sec. Mot. Dismiss at 2, ECF No. 39 ("Second LUBA Mot.").[2] Plaintiff opposes the motion. ECF No. 40. All parties have consented to jurisdiction by a U.S. Magistrate Judge. *See* ECF No. 19. For the reasons that follow, LUBA's second motion to dismiss is DENIED.

## BACKGROUND

### I.   Factual Background

Plaintiffs operate a church in Umpqua, Oregon, a small farming community located in Douglas County. Compl. ¶¶ 1–3, ECF No. 1. Plaintiffs' property is zoned for exclusive farm use ("EFU"), which allows churches and single-family residential dwellings not engaged in farm use to exist on EFU zoned land. *See* Compl. Ex. A, ECF No. 1-2. County ordinances also permit "accessory uses" of real property—*i.e.*, "uses incidental, appropriate, and subordinate to the main use of a lot or building"—on EFU zoned land. *Id*. Oregon law and county ordinance further allow for primary or accessory dwellings to be established on EFU zoned land. *Id*.; *see also* Or. Rev. Stat. ("ORS") § 215.283(1)(e). Oregon law also authorizes churches on EFU zoned land in certain circumstances. *See* ORS § 215.283(1)(a).

---

[1] The Complaint originally included claims against Douglas County. ECF No.1. Plaintiff, however, dismissed those dismissed in October 2020. ECF Nos. 26, 27.

[2] The Court notes that Defendants' motion does not include page numbers as required by local rule. *See* LR 10-1 (e) Pagination Requirements ("Every page of a pleading or other document (not including attachments or exhibits) must bear a footer with a brief description of the pleading or document and consecutive numbering at the bottom of the page."). The Court's references therefore are to the page numbers as listed in the larger PDF at ECF No. 39.

Umpqua has little to no available housing for pastor, Plaintiff Royston. Compl. ¶ 4. Royston's responsibilities as a pastor require his presence at CVC's property on a full-time basis to, among other duties, lead worship services, provide spiritual counsel, and maintain church property. *Id*. Plaintiffs thus hold a sincere religious belief that in order to serve the Umpqua community effectively, Royston must live fulltime in the community on church property. Compl. ¶ 3–4.

Plaintiffs applied to the Douglas County Planning Commission (the "Commission") for a permit to convert one room in the house of worship into a parsonage for Royston and his wife. *Id.* A parsonage is a church-owned residential dwelling provided in conjunction with a church's religious use of its real property. Compl. ¶ 14. Initially, the Commission approved the application. *Id.*

A neighboring vineyard owner (the "Wetherells") challenged the Commission's approval and appealed to LUBA, which has jurisdiction to review land use decisions of local governments within the state of Oregon. Compl. ¶ 4–5. The Wetherells argued to LUBA that Oregon law defines churches as "nonresidential place[s] of worship" and "mandates that any housing churches provide for their clergy be *detached* from the churches' houses of worship." Compl. ¶ 20 (emphasis added); *see also* ORS § 215.441(1)(g). Plaintiffs responded that the RLUIPA required local governments to allow churches to use their own land for the free exercise of religion "to the maximum extent permitted by the terms of" the United States Constitution and RLUIPA and therefore the Wetherells' challenge to the Commission's application grant should fail. *Id*. (citing 42 U.S.C. § 2000-cc(3)(g)).

Ultimately, LUBA denied Plaintiffs' application in August 2019. Compl. ¶ 5; *see also* Compl. Ex. C, ECF No. 1-4. The Oregon Court of Appeals affirmed LUBA's decision without

opinion in October 2019. Compl. Ex. D, ECF No. 1-5. The Oregon Supreme Court denied the petition for review approximately six months thereafter. *Id*. Ex. E. ECF No. 1-6.

## II. RULIPA's Enactment and Statutory Framework

Congress enacted RLUIPA to protect the free exercise of religion guaranteed by the First Amendment from government regulation in the wake of several decisions by the Supreme Court. *See California-Nevada Annual Conference of the Methodist Church v. City & Cty. of San Francisco*, 74 F. Supp. 3d 1144, 1153 (N.D. Cal. 2014). Congress' first attempt to legislate such protections followed the Supreme Court's decision in *Employment Div., Dept. of Human Res. of Or. v. Smith*, 494 U.S. 872 (1990) ("*Smith*").

In *Smith*, the Court held that neutral laws of general applicability could prohibit conduct prescribed by an individual's religion consistent with the Constitution. *Id*. The Court determined that such laws were not subject to heightened scrutiny. *Id.* at 885. Even where the burden on religion was substantial, the Court rejected the attempt to require state laws to serve a compelling interest. *Id.* at 883–84.

After *Smith*, Congress enacted the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*, relying on its enforcement powers under section 5 of the Fourteenth Amendment. Through RFRA, Congress attempted to codify the pre-*Smith* free-exercise jurisprudence by prohibiting the government from "substantially burden[ing] a person's exercise of religion" unless "it demonstrates that application of the burden to the person . . . is in furtherance of a compelling government interest and . . . is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb–1(a).

The Supreme Court, however, held that RFRA was unconstitutional as applied to state and local governments because it exceeded Congress' section 5 powers. *See City of Boerne v.*

*Flores*, 521 U.S. 507, 536 (1997). Congress' section 5 enforcement powers, the Court held, were limited to enacting legislation that is "remedial" in nature. *Id*. And such powers were limited to correcting documented constitutional violations—*i.e.*, legislation required a "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.* at 520. Because RFRA was "so out of proportion to a supposed remedial or preventive object," and the legislative history "lack[ed] examples" of the wrongs sought to be corrected, the Court deemed unconstitutional Congress' application of RFRA to state and local governments. *Id.* at 530, 532, 536.

    In response to the Court's partial invalidation of RFRA, Congress enacted RLUIPA, 42 U.S.C. § 2000cc. RLUIPA "replace[d] the void provisions of RFRA[,] and prohibit[ed] the government from imposing 'substantial burdens' on 'religious exercise' unless there exists a compelling governmental interest and the burden is the least restrictive means of satisfying the governmental interest." *Guru Nanak Sikh Soc. of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 985–86 (9th Cir. 2006) (citing *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1033–34 (9th Cir. 2004). Specifically, RLUIPA provides that:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—
>
> > (A) is in furtherance of a compelling governmental interest; and
> >
> > (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.A. § 2000cc. "Religious exercise" as defined by RLUIPA is limited to:

Page 5 — OPINION AND ORDER

> (A) In general
>
>> The term "religious exercise" includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief.
>
> (B) Rule
>
>> The use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose.

42 U.S.C.A. § 2000cc–5. To avoid RFRA's fate, Congress limited RLUIPA's reach to only regulations regarding land use and prison conditions. *See id.* (citing *Cutter v. Wilkinson*, 544 U.S. 709, 715, (2005)). Of particular relevance here is RLUIPA § 2000cc-(a)(2)(c), which relates to substantial burdens in the context of land use regulations. Congress defined the activities that qualify as "land use" as follows:

> The term "land use regulation" means a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest.

42 U.S.C. § 2000cc–5. RLUIPA thus applies if "the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2)(C).

Under RLUIPA, the religious entity bears the burden of persuasion on whether zoning laws, or the application of those zoning laws to a particular property, "substantially burdens" its "exercise of religion." *San Jose Christian Coll.*, 360 F.3d at 1034. However, Congress directed

that RLUIPA "be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C.A. § 2000cc.

### III. Proceedings Before this Court

LUBA filed their first motion to dismiss in May 2020, arguing the Court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine[3] and that Plaintiffs' claims were precluded. *See* Def. LUBA's Mot. Dismiss ("First LUBA Mot."), ECF No. 8. The Court heard oral argument and ultimately denied LUBA's motion in October 2020 finding (1) that *Rooker-Feldman* did not deprive the Court of subject matter jurisdiction and (2) that neither claim nor issue preclusion applied to Plaintiffs' claims. *See* Op. and Order, 2020 WL 6287477, at *1 (D. Or. Oct. 27, 2020), ECF No. 27, ("October O&O"). Shortly thereafter, the Court scheduled a conference pursuant to Rule 16 Discovery Conference for early January 2021. ECF Nos. 28, 33.

On November 24, 2021, Defendants' current counsel filed a notice of appearance on behalf of LUBA. ECF No. 34. Approximately 24 days later—and only 18 days before the already scheduled Rule 16 Discovery Conference—Defendants' counsel filed a second motion to dismiss "to more comprehensively address the legal deficiencies in Plaintiffs' lawsuit, rather

---

[3] The *Rooker-Feldman* doctrine limits federal subject matter jurisdiction over claims seeking to reverse state judicial determinations because appellate jurisdiction over state actions is left exclusively to the Supreme Court. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). More recently, however, the Supreme Court has explained that the "narrow ground occupied by *Rooker-Feldman*" is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005); *see also Lance v. Dennis*, 546 U.S. 459, 464 (2006) ("[n]either *Rooker* nor *Feldman* elaborated a rationale for a wide-reaching bar on the jurisdiction of lower federal courts, and our cases since *Feldman* have tended to emphasize the narrowness of the *Rooker-Feldman* rule").

than focusing on the single *Rooker-Feldman* defense." Second LUBA Mot. at 2. As noted, Plaintiff opposes the motion. ECF No. 40.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). Courts must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (noting that when a court lacks subject-matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even *sua sponte* if necessary).

A motion to dismiss under Rule 12(b)(6) for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All

reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A motion to dismiss under Rule 12(b)(7) may be granted for failure to join a party required to be joined by Rule 19. In evaluating the motion to dismiss, the court "must undertake a two-part analysis: it must first determine if an absent party is [required]; then, if the party cannot be joined due to sovereign immunity, the court must determine whether . . . in 'equity and good conscience' the suit should be dismissed." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990); *Dine Citizens Against Ruining Our Env't v. BIA*, 932 F.3d 843, 851 (9th Cir. 2019). "The inquiry is a practical one and fact-specific." *Dine Citizens*, 932 F.3d at 851.

## DISCUSSION

Defendants move to dismiss Plaintiffs' RLUIPA claim on three grounds. First, Defendants assert that because Plaintiffs litigated their RLIUPA case through LUBA, the Oregon Court of Appeals, and the Oregon Supreme Court without taking an *England*-Reservation, the Court should dismiss Plaintiffs' claims pursuant to Rule 12(b)(1). Next, Defendants argue that because LUBA does not have the authority to provide the relief Plaintiffs seek, the Court should dismiss Plaintiffs' claims pursuant to Rule 12 (b)(6). Finally, Defendants contend that Plaintiffs' suit fails to join the necessary parties and therefore should be dismissed pursuant to Rule 12(b)(7). Second LUBA Mot. at 1–3. Because subject matter jurisdiction is a prerequisite to bringing suit in federal court and may be tested at any time, the Court has considered Defendants' subject matter jurisdiction arguments and finds they lack merit. Accordingly, Defendants' Rule 12(b)(1) motion is denied. Because Defendants arguments in relation to their

Rule 12(b)(6) and (7) motions were available to Defendants and not raised in their first motion to dismiss, and because Defendants have not raised these new arguments in a manner permitted by the Federal Rules of Civil Procedure, the Court declines to consider the new arguments. Accordingly, Defendants' Rule 12(b)(6) and (7) motion is also denied. Defendants must now file an Answer and this case will proceed to discovery.

I.      Second Rule 12 Motion to Dismiss

"Rules 12(g) and 12(h) serve to eliminate the presentation of [Rule 12] defenses in a piecemeal fashion." *Hild v. Bank of Am., N.A.*, 2015 WL 1813571, at *3 (C.D. Cal. Apr. 21, 2015) (citation and quotation marks omitted). Specifically, "Rule 12(g)(2) prohibits a party from raising in a second Rule 12 motion a defense or objection that was available to the party but omitted from an earlier Rule 12 motion, except as provided in Rule 12(h)(2) or (3)." *Holloway v. Clackamas River Water*, No. 3:13-cv-01787-AC, 2020 WL 5471476, at *12 (D. Or. Apr. 24, 2020), *adopted*, 2020 WL 5441562 (D. Or. Sept. 10, 2020). Thus, a party may not raise in second Rule 12 motion arguments that were available to them unless one of the two exceptions apply.

   A.      Subject Matter Jurisdiction

Addressing the latter exception first, Rule 12(h)(3) provides that, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *See also Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012) ("Indeed, '[t]he objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.'") (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)) (bracketing in

original). In other words, any party may raise the issue of subject matter jurisdiction at any time—in effect what is the equivalent of a Rule 12(b)(1) motion to dismiss.

Here, Plaintiffs' invocation of federal question jurisdiction is appropriate under the federal statute that forms the basis for their lawsuit. Defendants assert, however, that this Court lacks subject matter jurisdiction because (1) Plaintiffs failed to make an *England*-Reservation when appealing LUBA's decision and (2) the Court's previous analysis of Defendants' *Rooker-Feldman* was erroneous in light of the newly discovered arguments in their second motion to dismiss. Second LUBA Mot. at 12. The Court declines to revisit its prior holding that the "*Rooker-Feldman* does not deprive this Court of subject matter jurisdiction." October O&O, 2020 WL 6287477, at *6. The Court further concludes that Plaintiffs' failure to formally lodge an *England*-Reservation is not fatal to their claim under RLUIPA.

*England v. Louisiana State Bd. of Med. Examiners* involved a group of plaintiffs who, after graduating from chiropractic school, sought to practice in the state of Louisiana without complying with the state's licensing requirements. 375 U.S. 411, 412 (1964). The plaintiffs filed a lawsuit in federal court challenging the constitutionality of the Louisiana licensing scheme. *Id.* Relying on the *Pullman* abstention[4] doctrine, the district court stayed the proceedings to allow Louisiana courts to decide a threshold question of state law: whether the state statute applied to chiropractors in the first instance. *Id.* at 413. The state court, however, not only resolved the

---

[4] *Pullman* abstention allows courts to decline jurisdiction "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 189, (1959) (citing *R.R. Comm. v. Pullman Co.*, 312 U.S. 496 (1941)). *Pullman* "abstention is appropriate when (1) the federal plaintiff's complaint requires resolution of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear." *San Remo Hotel v. City & County of San Francisco*, 145 F.3d 1095, 1104 (9th Cir. 1998).

state-law question, holding the statute applied to the plaintiffs, but also held that its application was consistent with the Fourteenth Amendment to the Federal Constitution. *Id.* at 414. The district court then dismissed the federal action without addressing the merits of the federal claim. *Id.*

On appeal, the Supreme Court "held that when a federal court abstains from deciding a federal constitutional issue to enable the state courts to address an antecedent state-law issue, the plaintiff may reserve his right to return to federal court for the disposition of his federal claims." *San Remo Hotel, L.P. v. City & Cty. of San Francisco, Cal.*, 545 U.S. 323 (2005) (citing *England*, 375 U.S. at 419)). The Ninth Circuit has described how the Supreme Court's holding in *England* has evolved into the contemporary *England*-Reservation doctrine:

> The England rule is a salutary one. It preserves "the role of state courts as the final expositors of state law" as recognized by the abstention doctrine, as well as the interests of putative federal litigants who have the "right . . . to choose a Federal court where there is a choice." [*England*, 375 U.S.] at 415. Additionally, the England rule protects "the primacy of the federal judiciary in deciding questions of federal law." *Id.* at 415–16.

*Los Altos El Granada Invs. v. City of Capitola*, 583 F.3d 674, 685 (9th Cir. 2009) (footnotes omitted in *Los Altos*).

The Ninth Circuit has also explained that a party "may accomplish [a reservation of federal claims] by making on the state record the 'reservation to the disposition of the entire case by the state courts.'" *Los Altos*, 583 F.3d at 687–88 (quoting *England*, 375 U.S. at 421). The *England* Court did not, however, "specify a form for the reservation and cautioned that 'an explicit reservation is not indispensable; the litigant is in no event to be denied his right to return to the District Court unless it clearly appears that he voluntarily did more than [*Government and Civic Employees Organizing Committee, CIO v. Windsor,* 353 U.S. 364 (1957)] required and

fully litigated his federal claims in the state courts.'" *Id.* (quoting *England*, 375 U.S. at 421 n.12) (bracketing in *Los Altos*)). The Ninth Circuit has made clear that "an explicit, on the record reservation is not required to preserve federal claims." *Los Altos*, 583 F.3d at 687. Finally, of particular relevance here, *England* "held that 'evidence that a party has been compelled by the state courts to litigate his federal claims there will of course preclude a finding that he has voluntarily done so.'" *Id.* (quoting *England*, 375 U.S. at 421 n.12).

Applying those principles here, the Court is not persuaded that *England* necessarily applies in a case such as this one where the plaintiff in the federal action did not in fact initiate any lawsuit in state court. Here, Plaintiffs were forced to intervene in a state administrative land use proceeding as the result of a third-party challenging Plaintiffs' acquisition of a land use permit. Defendants have not supplied a single case that suggest the *England*-Reservation doctrine applies in such a circumstance. Moreover, such a proceeding seems to be exactly the type of activity Congress sought to permit federal courts to review when it enacted RLUIPA where it defined "Government" as follows:

> (4) Government
>
> The term "government"--
>
>> (A) means--
>>
>>> (i) a State, county, municipality, or other governmental entity created under the authority of a State;
>>>
>>> (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and
>>>
>>> (iii) any other person acting under color of State law; and . . . .

42 U.S.C. § 2000cc-5.

Page 13 — OPINION AND ORDER

To the extent Plaintiffs relied on RLUIPA in support of their defense of the Commissions' approval of their permit, that is categorically different than a would-be plaintiff who voluntarily avails themselves of a state forum by filing a lawsuit and thereby agrees to "fully litigate[ their] federal claims in the state courts." *Los Altos*, 583 F.3d at 88 (quoting *England*, 375 U.S. at 421 n.12).

Finally, assuming *arguendo* that *England* applies to RLUIPA claims of parties who never in fact initiate lawsuits in state court, on this record, the Court finds Plaintiffs were not required to make an explicit reservation because there is sufficient evidence that Plaintiffs were "compelled by the state [administrative agency] to litigate [their] federal claims[.]"*Los Altos*, 583 F.3d at 687–88 (quoting *England*, 375 U.S. at 421 n.12). First, it is not immediately apparent to the Court how Plaintiffs could have made an *England*-Reservation to LUBA since they intervened in Wetherells' challenge to the Commission's grant of their permit. Plaintiffs had prevailed before the Commission and already had the relief they sought to obtain in the form of the permit. Second, as LUBA noted in its decision, although the Commission "appear[ed] to have determined that [RLUIPA] applie[d] by listing it under the 'Applicable Law' heading in the challenged decision," the Commission "did not actually apply or rely on RLUIPA in reaching its decision." Compl., Ex 4 at 6, ECF No. 1-4. The Court declines to penalize Plaintiffs for supplying reasoning in their attempt to defend a permit they were granted in the first instance.

As to Plaintiffs' appeal of LUBA's decision to the Oregon judicial department, the Court declines to punish Plaintiffs for exhausting administrative remedies. *See* Compl. ¶ 21 ("CVC appealed LUBA's order to the Oregon Court of Appeals . . . in order to exhaust state administrative remedies."); *see also* ORS § 197.850(3)(a) (explaining that the initial process for review of Board orders begins by "filing a petition in the [Oregon] Court of Appeals").

Page 14 — OPINION AND ORDER

In sum, after carefully reviewing *England* and its progeny, the Court is not persuaded that line of cases applies to parties such as Plaintiff who did not initiate the underlying state court suit. Defendants' motion to dismiss this case for lack of subject matter jurisdiction is DENIED.

### B.  Failure to State a Claim or Join Necessary Parties

As to the former exception to the general rule prohibiting successive motions to dismiss, Rule 12(h)(2) permits a defendant to raise a defense for "failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim" in three distinct circumstances: (1) "in any pleading allowed or ordered under Rule 7(a)," such as a complaint, answer, or reply to an answer; (2) "by a motion under Rule 12(c)," which is a motion for judgment on the pleadings; or (3) "at trial." *See also In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017) ("Rule 12(h)(2) tells us that it can be raised, but only in a pleading under Rule 7, in a post-answer motion under Rule 12(c), or at trial.") *aff'd*, 139 S. Ct. 1514 (2019) ("*In re Apple*"); *Hernandez v. City of San Jose*, 241 F.Supp.3d 959, 984–85 (N.D. Cal. 2017) ("[U]nder Rule 12(g)(2) and Rule 12(h)(2), a party that seeks to assert a defense pertaining to a failure to state a claim that was available but omitted from an earlier Rule 12 motion can only do so in a pleading, a Rule 12(c) motion, or at trial.").

Defendants' second motion to dismiss is not a pleading within the meaning of Rule 7(a); nor is it a motion for a judgment on the pleadings; nor are Defendants raising such an argument at trial. Accordingly, Defendants' second motion to dismiss does not fall within any of the exceptions contemplated by Rule 12(g)(2) and is therefore not properly before this Court.

Nonetheless, courts may exercise their discretion to consider a defense or objection that would be otherwise barred by Rule 12(h)(2) in some circumstances. *See e.g.*, *In re Apple*, 846 F.3d at 318, *Holloway*, 2020 WL 5471476, at *13. Although such an exercise of discretion is

technically "error," the Ninth Circuit has been "forgiving" of such error and found it harmless where the consideration of the motion would further the primary command "that the Federal Rules 'be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.'" *Id.* (quoting Fed. R. Civ. P. 1).

Defendants' second motion to dismiss seems to assume that Rule 12(g) simply does not apply to their motion and therefore does not address whether the Court should exercise its discretion to commit technical error in the interest of what is essentially judicial economy. *See generally* Second LUBA Mot. In response to Plaintiffs' discussion of the relevant caselaw discussing Rules 12(h) and (g), Defendants' Reply urges the "Court to apply the *Apple* standard and consider the merits of Defendants' Second Motion to Dismiss, given that denying the motion under Rule 12(g)(2) would create an unnecessary and costly delay." Def. LUBA's Reply Sec. Mot. Dismiss at 3–4, ECF No. 44.

Defendants' reliance on *In re Apple* is unavailing. Although *In re Apple* "conclude[d] that [appellate courts] should generally be forgiving of a district court's ruling on the merits of a late-filed Rule 12(b)(6) motion," the case does not stand for the blanket proposition that district courts may freely flout the Federal Rules whenever a party asks them to do so. *In re Apple*, 846 F.3d at 319. *In re Apple* involved successive motions to dismiss each filed after the plaintiff amended their complaint along with numerous rulings from the district court over the course of 18 months all of which significantly narrowed both the claims and parties. *In re Apple*, 846 F.3d at 316–17. Ultimately, the district court granted the final motion to dismiss under Rule 12(b)(6), which it had previously declined to rule on because the plaintiffs had finally sufficiently alleged standing. *Id.* at 317; *id.* at 320 ("The district court was willing to decide Apple's Rule 12(b)(6)

motion to dismiss for lack of statutory standing only when Plaintiffs finally alleged, in Complaint 4, sufficient injury to confer Article III standing to bring the challenged counts.").

Unlike *In re Apple*, this is not a case where the Court has previously granted motions to dismiss to which Plaintiffs have filed subsequent amended complaints, leaving a Rule 12(b)(6) motion unresolved for a more appropriate occasion sometime in the future of this lawsuit. Put differently, nothing has changed between when Defendants filed their first motion to dismiss other than their counsel and their arguments. Such an occasion does not warrant a deviation from the Federal Rules. The Court concludes that *In re Apple* does not require the Court to consider newly raised defenses in this context. Defendants are free to raise those new arguments in one of the circumstances outlined in Rule 12(h)(2). Defendants may do so, however, only after they file an Answer and this case proceeds to discovery. Defendants' motion to dismiss for failure to state a claim and join necessary parties is DENIED.

## ORDER

For the reasons above, Defendants' second motion to dismiss (ECF No. 39) is DENIED. Defendants' request for oral argument is DENIED as unnecessary. *See* LR 7-1(d)(1). Defendants have 21 days from the entry of this order to file an Answer to the Complaint. The Court will add this case to its next available Rule 16 conference calendar date.

DATED this 14th day of May 2021.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge
